313 S.E.2d 61

**STATE of West Virginia**

v.

**Georgia Jean CHESHIRE.**

No. 15948.

Supreme Court of Appeals of
West Virginia.

Jan. 27, 1984.

**124**

V. Alan Riley, Keyser, for appellant.

Chauncey H. Browning, Atty. Gen., Frederick S. Wilkerson, Asst. Atty. Gen., Charleston, for appellee.

PER CURIAM:

We granted Georgia Jean Cheshire a second appeal from two forgery convictions in the Circuit Court of Mineral County. In the first appeal, we found that the trial court did not conduct a proper competency hearing and make adequate findings of fact as to Cheshire's competency to plead guilty to the charges. *State v. Cheshire*, 170 W.Va. 217, 292 S.E.2d 628 (1982).[1] The trial court on remand conducted further hearings, made detailed findings of fact, and found from a preponderance of the evidence that Cheshire was competent to enter the guilty pleas. The trial court also found that she was competent to, and did, voluntarily, knowingly and intelligently waive her constitutional rights before confessing to the arson charge that influenced the trial court to deny probation. The trial court denied her motion to vacate the guilty pleas, denied probation, and sentenced her as provided for by law. We affirm.

---

1. The procedural history is detailed in that opinion and will not be repeated here, except as necessary to discuss the issues presented in this appeal.

The principal issue for decision is whether the trial court's finding that Cheshire was competent to enter the guilty pleas is supported by the evidence. A related issue is whether she has sufficient mental capacity to confess to a crime.

 "The test for mental competency to stand trial and the test for mental competency to plead guilty are the same." Syllabus Point 2, *State v. Cheshire, supra.* In Syllabus Point 2 of *State v. Arnold,* 159 W.Va. 158, 219 S.E.2d 922 (1975), *overruled on other grounds, State v. Demastus,* 165 W.Va. 272, 270 S.E.2d 649 (1976), we adopted the following two-part test for competency based on decisions of the United States Supreme Court:

"To be competent to stand trial, a defendant must exhibit a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational, as well as factual, understanding of the proceedings against him."

 In Syllabus Point 5 of *State v. Arnold,* we also identified several factors a trial court should consider in determining competency:

"Evidence of irrational behavior, a history of mental illness or behavioral abnormalities, previous confinement for mental disturbance, demeanor before the trial judge, psychiatric and lay testimony bearing on the issue of competency, and documented proof of mental disturbance are all factors which a trial judge may consider in the proper exercise of his discretion."

The trial court considered these factors and found no evidence of any irrational behavior other than the commission of crimes, and found no history of any mental illness, either in the defendant or her immediate family. The mental health experts agree that Cheshire is not mentally ill but mentally retarded. She has no record of confinement for mental illness. During both guilty plea hearings, she responded appropriately to the court's questions and sometimes consulted with her lawyer before answering. Based on his observation, the trial judge stated that he found her to be alert and, although she was sometimes slow to answer questions, he believed this was a result of fright rather than from a lack of understanding.

The trial court also stated that when the first guilty plea was taken there was nothing to even suggest Cheshire was incompetent. Her counsel had indicated his belief that she had a reasonable understanding of the proceedings. The trial court judge noted that if he were to base his ruling solely on his contacts with Cheshire, he would find that she has always had the ability to consult with a lawyer with rational understanding and has had a reasonable understanding of the nature of the proceedings against her.

The psychiatric testimony bearing on Cheshire's competency is as confusing and troubling as it is abundant. For example, two of the experts reached the conclusion that Cheshire was competent to stand trial, but because of mental retardation stated that it was doubtful she could assist counsel in her defense. In view of the fact that the experts agree on the absence of mental illness, the evidence bearing the degree of retardation is what is important here. The psychologists who administered I.Q. tests variously estimated her I.Q. as being between 59 and 74, with 59 being classified as "mildly mentally retarded," and 74 being classified as "borderline intellectual functioning." Overall I.Q. test results of 59, 68, and 74 were reported.

Dr. Thomas C. Stein, a clinical psychologist, found that she has the capacity to understand the nature of the proceedings against her based on the results of three different competency tests. This finding included a determination that she had the capacity to understand her current legal situation, the roles of the participants in a criminal proceeding, including the role of defense counsel, as well as the possible pleas, verdicts, dispositions, and penalties.

He testified that she was incompetent to stand trial, however, based on the second competency factor—the ability to consult with a lawyer with a reasonable degree of rational understanding. He concluded that she was incapable of assisting in the pre-

sentation of a defense because her intelligence level severely impaired her capacity to maintain a consistent legal strategy and to testify relevantly.

■ As the trial court's findings indicate, what is of particular significance is that Cheshire has fair to good recall of the facts surrounding the various criminal offenses and is able to communicate those facts accurately. The capacity to recall events is an important factor in determining whether a criminal defendant has the mental ability to assist counsel in presenting a defense. The defendant does not have to be a great witness to be competent to stand trial. It is the lawyer's job to cross-examine the witnesses and bring out the weaknesses, if any, in the government's case. The definitional problem about the legal concept of competency to stand trial also undermines the weight to be given the opinion evidence of Dr. Anthony DeMunecas, who questioned her ability to deal with cross-examination and such during a trial.

■ The trial court did not err in independently determining Cheshire was competent. The evidence preponderates in favor of competency, and the trial court's findings of fact are not clearly wrong. We agree with the trial court that Cheshire's mental retardation is not so severe as to preclude her from consulting with her attorney with a reasonable degree of rational understanding or to prevent her from having a rational and factual understanding of the nature of the proceedings against her. She has a fair capacity to recall events and was not so impaired that she did not understand court procedures. She can communicate on a simplistic level and will give accurate answers. The conduct of her lawyer does not indicate that he had any unusual difficulty in representing her on the forgery charges.

■ Cheshire also contends the trial court erred in considering her confession to an arson charge in denying probation. We understand Cheshire's contentions to be

that the State did not show by a preponderance of the evidence that she has the mental capacity of making a voluntary and knowing confession or to waive her rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We find no merit in these contentions.

The trial court planned to grant probation on the forgery convictions until the State presented evidence indicating that Cheshire had confessed to an assistant state fire marshal, E.L. Roush, that she had subsequently committed an arson. Roush testified that after the arson was committed, he received a telephone call from Cheshire's husband stating that she had threatened to commit an arson two or three days before the crime was committed.

Based on this information, Roush telephoned Cheshire on February 1, 1983, and asked her if he might come to her residence and talk with her. She agreed, and when he learned from her that she had two children present at her residence, he suggested that she meet him outside when he drove up in his car. As he drove up in a plain, unmarked car, she came outside. Due to the cold weather, he suggested that she get into the car. He was alone, and when she entered the car he immediately told her that she was not under arrest and could leave at anytime. He then fully advised her as to her *Miranda* rights, and she signed a waiver of rights form. When he first began to advise her of her constitutional rights, she told him that she already knew them due to prior involvements with criminal law, apparently referring to the two previous guilty pleas. After several minutes of discussion concerning marital problems, she confessed to the arson.

■ It was not error for the trial court to consider Cheshire's confession at sentencing. *Miranda* warnings did not have to be given by the assistant state fire marshal, if for no other reason than Cheshire was not in custody when she confessed.[2]

---

**2.** Consequently, we need not research the issue of whether custodial interrogations by a state

fire marshal concerning criminal matters are subject to the requirements of *Miranda.*

The obligation of police to warn a suspect of both his right to counsel and his right against self-incrimination applies only to custodial or other settings where there is a possibility of coercion. Syllabus Point 2, *State v. Andriotto*, 167 W.Va. 501, 280 S.E.2d 131 (1981).

■ Here, Cheshire was not under arrest and was free to leave at any time. She was not in custody for purposes of *Miranda. See, e.g., State v. Gum*, 172 W.Va. 534, 309 S.E.2d 32 (1983); *State v. Wotring*, 167 W.Va. 104, 279 S.E.2d 182, 189 (1981); *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710, 714 (1977). Even if *Miranda* were applicable, its requirements were fully met. She was advised of her rights and signed a written waiver of rights form.

■ After careful consideration of the totality of circumstances, we conclude that the trial court did not err in finding that the government had established by a preponderance of the evidence that Cheshire's confession was freely and voluntarily given. There can be absolutely no question but that her confession was voluntary in the sense that it was not the product of coercion or improper promises or inducements. She was fully advised of her right to counsel and her right to remain silent and signed a waiver of rights form. The only question is whether she possesses sufficient intelligence to legally give a confession. In *State v. Adkins*, 170 W.Va. 46, 289 S.E.2d 720, 727 (1982), we discussed the law on this point:

> It is the general rule that the intelligence of a person making a confession is but one factor to be considered in determining whether a waiver of rights was voluntary. The intelligence of the person confessing is not a controlling factor giving rise to a *per se* rule.
>
> . . . . .
>
> [W]e hold that where a person of less than normal intelligence does not have the capacity to understand the meaning and effect of his confession, and such lack of capacity is shown by evidence at the suppression hearing, it is error for the trial judge not to suppress the confession. However, where the defendant's lower than normal intelligence is *not shown clearly to be such as would impair his capacity to understand the meaning and effect of his confession, said lower than normal intelligence is but one factor to be considered by the trial judge in weighing the totality of the circumstances surrounding the challenged confession.* (Emphasis supplied.)

The evidence as discussed previously does not clearly show a lack of capacity to understand the meaning and effect of her confession. Cheshire was twenty-five years old at the time she confessed and had recent experience with the criminal justice system. She had been advised of her constitutional rights, including her right to counsel and her right to remain silent, in connection with her guilty pleas. Despite subnormal intelligence, the testimony indicates she had learned from prior experiences. It may have been unwise for her to confess or even foolish, but that will not render an otherwise voluntary confession inadmissible. The applicable rule of appellate review is stated in Syllabus Point 3 of *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978):

> A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence.

■ Cheshire also argues that the testimony of Dr. Patricia Williams was improperly admitted in evidence, in violation of the physician-patient privilege, because the doctor was contacted by the defense on a private basis to perform a further evaluation after this Court remanded the case for a proper competency hearing. We find no merit in this point of error.

■ Aside from the issues of whether such privilege exists in a criminal case in this state, and whether Cheshire could rely on it having put her competency in issue, *see*, note 6, *State v. Simmons*, 172 W.Va. 590, 309 S.E.2d 89 (1983); F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* 214 (1978), we question whether

the consultation was performed on a private basis. The motion to suppress the doctor's testimony indicates the consultation fee was paid for by the West Virginia Public Legal Services Plan, and Dr. Williams' report indicates that Cheshire was referred by her attorney for a psychological re-evaluation to determine her competency to enter pleas of guilty to the forgery charges. Second, a November 13, 1982 order of the court indicates that the parties stipulated to the contents of the doctor's written psychological evaluation and that the information contained therein could be considered by the trial court in making its determination of whether the defendant was mentally competent to enter her guilty plea and to waive her *Miranda* rights. In view of this stipulation, we find no basis for any complaint about the admission of the doctor's testimony. We also note that information obtained during a court-ordered examination to determine competency pursuant to W.Va.Code, 27–6A–1 can be disclosed. *State v. Simmons, supra.*

We affirm.

Affirmed.