413 S.E.2d 162

**STATE of West Virginia, Plaintiff
Below, Appellee,**

v.

**Stephen W. HATFIELD, Defendant
Below, Appellant.**

No. 19987.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 17, 1991.

Decided Dec. 19, 1991.

Thomas W. Smith, Jack Thompson, Charleston, for appellant.

Mario J. Palumbo, Teresa A. Tarr, Office of the Atty. Gen., Charleston, for appellee.

McHUGH, Justice:

This case is before the Court upon the appeal of Stephen W. Hatfield. The appellee is the State of West Virginia. The appellant pleaded guilty to one count of first degree murder and two counts of malicious wounding in the Circuit Court of Wayne County. Following the guilty plea, the appellant was sentenced to life with no mercy for the first degree murder charge,

and two to ten years for each malicious wounding charge.

## I

The allegations, based upon the grand jury proceedings, forensic evaluations, and the record of the guilty plea and sentencing proceedings, are as follows.

On May 8, 1988, the appellant went to see his former girlfriend, Tracey Andrews, in order to give her something that belonged to her, as well as a key to his own residence so that she could get some of her personal belongings. At the time, Andrews was living with her current boyfriend, Dewey Meyers.

When the appellant arrived at Meyers' residence, he began talking to Andrews. Andrews suggested that they go inside the house to see Meyers. Upon going inside the house, they found Meyers seated at the kitchen table. At this point, the appellant's and State's versions differ as to what exactly transpired. However, it is clear that the appellant shot at Meyers several times. Meyers was struck by at least one bullet during this particular shooting. After taking Andrews into an adjoining bedroom, the appellant pursued Meyers through the neighborhood, shooting at him. Meyers fell down and the appellant shot him again, in Meyers' jaw. As the appellant reloaded his gun, Meyers fled.

The appellant went back into the house and took Andrews outside. As Andrews tried to get away, the appellant shot her twice in the back. After Andrews fell to the ground, the appellant stood over her and shot her again, in the back of her head. Andrews died from the gunshot wounds.

The appellant then went to his car, picked up something from the back seat, and reloaded his gun. The appellant then walked over to Meyers' neighbor, Roger Cox, and demanded Cox's car keys. When Cox tried to explain that he did not have the keys, the appellant shot Cox in the chest and in the hand. The appellant then fled the scene.

The appellant was eventually captured by the police following a shootout on State Route 60. The appellant was wounded during this shootout.

The appellant was indicted on July 5, 1988, on one count of first degree murder and two counts of malicious wounding.

## II

Following indictment, the appellant, while recuperating from gunshot wounds, attempted suicide, and consequently, numerous proceedings began with respect to the appellant's mental status.

On June 10, 1988, a motion for a psychiatric evaluation was filed by counsel for the appellant to determine if the appellant was capable of knowingly and intelligently waiving certain constitutional rights before he made any statements; if the appellant was capable of assisting counsel and understanding the nature of the proceedings against him; and if, at the time of commission, the appellant appreciated the wrongfulness of his act.[1] A hearing was held on that day, June 10, 1988, at which Dr. Johnny L. Gallemore, Jr. testified. Dr. Gallemore stated that he had performed "psychiatric consultation" following the appellant's suicide attempt.

On July 7, 1988, the circuit court ordered that the appellant be committed for twenty days to Weston State Hospital to undergo psychiatric examinations, and on August 15, 1988, the circuit court issued an order extending the appellant's stay at Weston for an additional twenty days.[2]

While he was at Weston, the appellant was examined and evaluated by Dr. Herbert C. Haynes, a psychiatrist, and Earnest Watkins, the Director of Psychology at Weston.

The report filed by Watkins, on September 17, 1988, was based upon the "Georgia

---

1. Appellate counsel did not represent the appellant in the lower court proceedings.

2. On September 1, 1988, Judge Maynard was appointed as a special judge in this case to replace Judge Chafin, who had voluntarily recused himself, because his brother had become co-counsel for the appellant.

Court Competency Test" and the "Competency to Stand Trial: Assessment Instrument" test. Watkins' report contained the finding that the appellant is competent to stand trial, but is not criminally responsible for his actions.[3]

The report filed by Dr. Haynes, on October 12, 1988, found that the appellant is not competent to stand trial, but not because the appellant lacks comprehension of criminal proceedings, but because the appellant suffers from major depression and an intense need for punishment as extreme as death. Dr. Haynes also found that the appellant is not criminally responsible for his actions.

The appellant filed a motion for a competency hearing pursuant to *W. Va. Code*, 27–6A–1 [1983] and *W. Va. Code*, 27–6A–2 [1979].[4]

On October 17, 1988, the circuit court granted the State's request that the appellant undergo further psychiatric evaluation and ordered that the appellant be examined by Dr. Ralph Smith.

Dr. Smith met with the appellant from October, 1988, to January, 1989, conducted telephone interviews, reviewed criminal investigation reports, and newspaper accounts of the events of May 8, 1988.

On January 23, 1989, Dr. Smith wrote a letter to the prosecuting attorney, stating that, in his opinion, the appellant is competent to stand trial, but he (Dr. Smith) is presently reviewing records to determine whether or not the appellant is criminally responsible.

A competency hearing was held in the circuit court on January 27, 1989. The court, in an order dated February 6, 1989, found the appellant competent to stand trial by a preponderance of the evidence, and set trial for February 27, 1989. The court also ordered that the appellant may request a hearing on the court's findings "within a reasonable time."[5]

---

**3.** Watkins' finding that the appellant is not responsible for his criminal actions was based on notes of the appellant's account of events as given to Dr. Haynes.

**4.** *W. Va. Code*, 27–6A–1 [1983] provides, in part:
(a) Whenever a court of record ... believes that a defendant in a felony case ... in which an indictment has been returned, ... may be incompetent to stand trial or is not criminally responsible by reason of mental illness, ... it may at any stage of the proceedings after the return of an indictment or the issuance of a warrant or summons against the defendant, order an examination of such defendant to be conducted by one or more psychiatrists, or a psychiatrist and a psychologist[.]
*W. Va. Code*, 27–6A–2 [1979] provides, in part:
(a) At a hearing to determine a defendant's competency to stand trial, the defendant shall be present and he shall have the right to be presented by counsel and introduce evidence and cross-examine witnesses. The defendant shall be afforded timely and adequate notice of the issues of the hearing and shall have access to a summary of the medical evidence to be presented by the state. The defendant shall have the right to an examination by an independent expert of his choice and testimony from such expert as a medical witness on his behalf. All rights generally afforded a defendant in criminal proceedings shall be afforded to a defendant in such competency proceedings.
(b) At the termination of such hearing the court of record shall make a finding of fact upon a preponderance of the evidence as to the individual's competency to stand trial based on whether or not the individual is capable of participating substantially in his defense and understanding the nature and consequences of a criminal trial. If the individual is found competent, the court of record shall forthwith proceed with the criminal proceedings. If the individual is found incompetent to stand trial, the court of record shall upon the evidence make further findings as to whether or not there is a substantial likelihood that the individual will attain competency within the next ensuing six months, and if the court of record so finds, the individual may be committed to a mental health facility for an improvement period not to exceed six months.

**5.** Apparently, Dr. Smith completed his written report on February 17, 1989, finding the appellant criminally responsible as well as competent to stand trial. This part of Dr. Smith's report is not in the record before us, although the appellant does not object to this assertion by the State. In any event, the circuit court had already ruled that the appellant is competent to stand trial and, in so ordering, the circuit court noted that whether the appellant is criminally responsible will be a jury question. *See* syl., *State ex rel. Smith v. Scott*, 167 W.Va. 231, 280 S.E.2d 811 (1981) (adjudication of criminal *responsibility* prior to trial is within discretion of trial court).

On February 7 or 8, 1989, the appellant attempted to commit suicide for the second time.

On February 27, 1989, the date that had been set for trial, the appellant pled guilty to all three counts of the indictment. This plea was entered against the advice of defense counsel.[6]

On December 27, 1989, the appellant was sentenced to life with no mercy for the first degree murder charge, and two to ten years for each malicious wounding charge.

### III

Primarily, the appellant raises arguments with respect to the appellant's competence and the circuit court's acceptance of the guilty plea.

In *Call v. McKenzie*, 159 W.Va. 191, 220 S.E.2d 665 (1975), this Court set forth guidelines that should be followed by a trial court before accepting a guilty plea.

When a criminal defendant proposes to enter a plea of guilty, the trial judge should interrogate such defendant on the record with regard to his intelligent understanding of the following rights, some of which he will waive by pleading guilty: 1) the right to retain counsel of his choice, and if indigent, the right to court appointed counsel; 2) the right to consult with counsel and have counsel prepare the defense; 3) the right to a public trial by an impartial jury of twelve persons; 4) the right to have the State prove its case beyond a reasonable doubt and the right of the defendant to stand mute during the proceedings; 5) the right to confront and cross-examine his accusers; 6) the right to present witnesses in his own defense and to testify himself in his own defense; 7) the right to appeal the conviction for any errors of law; 8) the right to move to suppress illegally obtained evidence and illegally obtained confessions; and, 9) the right to

challenge in the trial court and on appeal all pre-trial proceedings.

*Id.,* syl. pt. 3.

Furthermore, Rule 11 of the *West Virginia Rules of Criminal Procedure* provides, in part:

(c) *Advice to Defendant.* Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

(1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and

(2) If the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if necessary, one will be appointed to represent him; and

(3) That he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, the right not to be compelled to incriminate himself, and the right to call witnesses on his behalf; and

(4) That if he pleads guilty or nolo contendere that there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial; and

(5) That if he pleads guilty or nolo contendere, the court may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for false swearing.[7]

---

6. The State agreed to stand silent with respect to sentencing.

7. *W.Va.R.Crim.P.* 11(g) provides:

(g) *Record of Proceedings.* A verbatim record of the proceedings at which the defen-

dant enters a plea shall be made and, if there is a plea of guilty or nolo contendere, the record shall include, without limitation, the court's advice to the defendant, the inquiry into the voluntariness of the plea, including

These guidelines, set forth in *Call* and *W.Va.R.Crim.P.* 11(c), promote "the law of this jurisdiction that, prior to receiving a plea of guilty, the court should see that it is freely and voluntarily made by a person of competent intelligence with a full understanding of its nature and effect." *Riley v. Ziegler*, 161 W.Va. 290, 292, 241 S.E.2d 813, 815 (1978). This principle is consistent with the holdings of federal and state courts throughout the United States. *See* 2 *Wharton's Criminal Procedure* § 311 (C. Torcia 13th ed. 1990) (collecting cases).

Our review of the record in this case indicates that the inquiry of the appellant by the circuit court, under the circumstances of most cases, would be adequate to satisfy the requirements to ensure protection of a defendant's constitutional rights.

However, in this case, there is an overlay to the proceedings in the circuit court which, if not explored further by that court, may result in severe prejudice to the appellant. This involves: (1) the second suicide attempt by the appellant; and (2) the appellant's plea of guilty *against the advice of counsel.*

As stated in section II, the appellant, *after* being adjudged competent to stand trial by the circuit court, attempted to commit suicide for a second time.

The State points out a recent case decided by the Supreme Court of Arizona with strikingly similar facts to the one before us in this regard. In *State v. Amaya–Ruiz*, 166 Ariz. 152, 800 P.2d 1260 (1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2044, 114 L.Ed.2d 129 (1991), the court was confronted with the appeal of a criminal defendant who attempted committing suicide after being adjudged competent to stand trial. In affirming that defendant's death sentence,

the court relied on the extensive review of the defendant's competency by medical experts. However, that court also pointed out that "[t]he trial court has broad discretion in considering all available information when determining the need for an additional competency examination." 800 P.2d at 1271.

▮ This Court has also recognized the discretion of a trial court in ordering an examination of a criminal defendant. "When a trial judge is made aware of a possible problem with defendant's competency, it is abuse of discretion to deny a motion for psychiatric evaluation." Syl. pt. 4, in part, *State v. Demastus*, 165 W.Va. 572, 270 S.E.2d 649 (1980).[8]

▮ This Court has also spoken to the effect of a suicide attempt on the determination of a criminal defendant's competency. "Genuine attempts at suicide constitute evidence of irrational behavior. When these acts are brought to the attention of a trial judge, he should order a psychiatric examination of a defendant." Syl. pt. 2, *State v. Watson*, 173 W.Va. 553, 318 S.E.2d 603 (1984).

As stated previously, we are concerned with the fact that the appellant in this case entered a guilty plea against the advice of his lawyer.[9] In addition to setting forth requirements that a court must follow in taking a guilty plea from a defendant, *W.Va.R.Crim.P.* 11 also provides, in part:

(d) *Ensuring That the Plea Is Voluntary.* The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart

---

any plea agreement, and the inquiry into the accuracy of a guilty plea.

**8.** The State points out that the defendant failed to make a request for additional evaluations following the second suicide attempt. However, *W.Va.Code,* 27–6A–1(a) [1983] provides that "[w]henever a court of record ... believes that a defendant ... may be incompetent to stand trial[,] ... it may at any stage of the proceedings ... order an examination of such defendant[.]" Moreover, our concern in this case, as discussed

above, also lies with the combined effect of the questions surrounding the appellant's mental state and the appellant pleading guilty against the advice of counsel.

**9.** The record is clear that trial counsel advised the appellant to not enter a guilty plea. The appellant was questioned *by trial counsel* about this at the proceeding wherein the plea was taken.

from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the state and the defendant or his attorney.

■ The record in this case reveals that at the taking of the plea, the circuit court inquired of the appellant as to whether his lawyer had discussed the *consequences* of pleading guilty. However, the record is not adequately developed with regard to why defense counsel was of the opinion that the appellant should *not* plead guilty.[10] More importantly, after counsel gave his reasons on the record why the guilty plea should not be tendered, the trial court should have asked the defendant on the record if he understands his counsel's statement and whether he still persists in pleading guilty.

■ This Court has held that "[t]he test for mental competency to stand trial and the test for mental competency to plead guilty are the same." Syl. pt. 2, *State v. Cheshire*, 170 W.Va. 217, 292 S.E.2d 628 (1982). The lack of questioning of the appellant by the circuit court with regard to the appellant's desire to plead guilty against the advice of counsel, and the critical nature of such a decision, is of concern to this Court.[11]

This Court has enunciated the importance of the relationship between a criminal defendant who exhibits signs of mental incompetency, and his or her lawyer. "To be competent to stand trial, a defendant must exhibit a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational, as well as factual, understanding of the proceedings against him." Syl. pt. 2, *State v. Arnold*, 159 W.Va. 158, 219 S.E.2d 922 (1975), *overruled on another point*, *State v. Demastus*, 165 W.Va. 572, 270 S.E.2d 649 (1980).

**10.** The circuit court did inquire of trial counsel as to why the appellant was advised to not plead guilty, because as the circuit court stated, that would weigh heavily on whether or not the court would accept the plea. However, trial counsel's reply was not responsive to the circuit court's concerns. The following transpired prior to the taking of the plea:

> [THE COURT:] One thing I want to know from counsel, and it's going to weigh heavily on whether or not I permit this man to plead. If you're telling him that he should go to trial because you truly believe this man is insane or is not competent to enter this plea, and if that's the reason for this advice, I respect each and both of you gentlemen ... and I place a lot of value in your judgment as lawyers.
> On the other hand, if you're telling me that you are advising him not to plead guilty because you don't think he can do any worse by going to trial and that legally he stands with an insanity defense some shot at an acquittal, some shot at a lesser verdict, that's another matter, and if that's the reason you're giving him that advice, then I'm not going to permit counsel for defendant—I would like to know from you, and I realize I'm treading on some thin ice here with privilege, but I would like to know why you are giving him the advice you are giving him.
> If it's on the grounds of techniques in the law, that's one thing. If you think this man is not competent, I want to know that, Lafe and Ray.
> MR. HAMPTON [defense counsel]: Let me address that. Let me say this. *The psychia-*

*trists have indicated he's tried to commit suicide a multiple number of times. They have indicated to us that they don't believe he's competent to make the judgment to enter the plea.*
> The court has talked to him and has addressed him, and there's no question that he remembers it. They *are concerned that this is merely another suicide attempt, if you will, the entry of the guilty plea.* It was from that standpoint that they advised us that there might be some problems with his being competent to make that determination.
> He has a history of suicide attempts and *they viewed the entry of the plea as merely another attempt on his behalf to commit suicide.* Does that answer your question?
> THE COURT: Not really.
> MR. HAMPTON: That's what they've told us.

February 27, 1989 proceeding, at 100–01 (emphasis supplied).

**11.** The only reference in the record to the circuit court's questioning of the appellant with respect to the appellant's desire to plead guilty, against the advice of counsel, is the following exchange, which did not even take place in open court, but in the circuit court judge's chambers:

> BY THE COURT:
> [Q.] Mr. Hatfield, you've heard what your lawyers have said here, sir. Do you want to enter a guilty plea to these charges against the advice of your lawyers?
> A. Yes.

February 27, 1989 proceeding, at 80.

"It is a fundamental guaranty of due process that a defendant cannot be tried or convicted for a crime while he or she is mentally incompetent." *State v. Cheshire,* 170 W.Va. 217, 219, 292 S.E.2d 628, 630 (1982). *See also Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Moreover, we have pointed out that *"additional* due process measures are required where the defendant's past mental history raises a 'bona fide doubt' as to his competency[.]" *State v. Garrett,* 182 W.Va. 166, 174, 386 S.E.2d 823, 831 (1989) (emphasis supplied).

As pointed out previously, due process considerations are of paramount importance prior to the acceptance of a guilty plea by the trial court. *See Call v. McKenzie,* 159 W.Va. 191, 220 S.E.2d 665 (1975).[12]

Where a circuit court has found that a defendant in a criminal case where the possible punishment is life imprisonment without mercy is competent to stand trial, but subsequent to the competency hearing, the defendant attempts to commit suicide, then against advice of counsel indicates his desire to plead guilty to the charges in the indictment, before taking the plea of guilty, the trial judge should make certain inquiries of the defendant and counsel for the defendant in addition to those mandated in *Call v. McKenzie,* 159 W.Va. 191, 220 S.E.2d 665 (1975). The court should require counsel to state on the record the reason why counsel opposes the guilty plea. The court should then ask the defendant to acknowledge on the record that he understands his counsel's statements and if in view of them he still desires to plead guilty. If the defendant then states he still desires to plead guilty, the court may accept the plea.

Therefore, this case is remanded to the Circuit Court of Wayne County so that it may further develop the record in light of our opinion herein and particularly syllabus point 6.[13]

Remanded.

---

12. We have also recognized that "[a] conviction upon a plea of guilty rather than after a full trial does not diminish the right to counsel." *State v. Armstrong,* 175 W.Va. 381, 385, 332 S.E.2d 837, 840 (1985). Although the appellant in this case was not denied his right to counsel by the state or the circuit court, it is possible that his mental competence, or lack thereof, was directly related to his decision to not follow counsel's advice. Under these circumstances, the appellant's decision in this regard may amount to a self-denial of his right to counsel.

13. The appellant also contends that there was an insufficient factual basis to support the guilty plea which was accepted by the circuit court. Although this case is remanded for further determination with respect to whether the guilty plea was properly taken due to the question of *competency,* we believe that the *factual* basis supports acceptance of the guilty plea inasmuch as the allegations, if taken as true, are sufficient to support the convictions therefor.

Finally, the appellant contends that the circuit court abused its discretion in denying the appellant's motion for a continuance of the trial. This motion was made on February 15, 1989 so that Dr. Gallemore, the appellant's treating psychiatrist, would have more time to prepare for trial. Dr. Gallemore did not receive the report of Dr. Smith until five to six days prior to the scheduled date of trial. However, there is obviously no prejudice in this regard in light of our remand.