522 S.E.2d 416

**STATE of West Virginia, Appellee,**

v.

**Stephen W. HATFIELD, Appellant.**

No. 25368.

Supreme Court of Appeals of
West Virginia.

Submitted June 8, 1999.

Decided July 15, 1999.

Dissenting Opinion of Chief Justice
Starcher, Nov. 10, 1999.

Thomas W. Smith, Esq., Charleston, West
Virginia, Attorney for Appellant.

Darrell V. McGraw, Jr., Attorney General, Barbara H. Allen, Esq., Managing Deputy Attorney General, Charleston, West Virginia, Attorneys for Appellee.

PER CURIAM:

This case is before the Court upon the appeal of the Appellant, Stephen W. Hatfield, from the January 28, 1998, order of the Circuit Court of Wayne County, Senior Judge James Holliday, presiding,[1] wherein the lower court, pursuant to this Court's directive in *State v. Hatfield,* 186 W.Va. 507, 413 S.E.2d 162 (1991) (referred to as *Hatfield I* ), once again determined that the Appellant was competent at the time he entered his original guilty pleas to one count of first degree murder and two counts of malicious assault and denied the Appellant's request to withdraw his guilty pleas. The lower court then ratified the previous sentence imposed upon the Appellant, that being life with no mercy for the first degree murder and two to ten years for each malicious wounding charge. The Appellant argues that the circuit court erred: 1) in refusing to follow the express directives of this Court after remand of the Appellant's case; and 2) in denying the Appellant due process of law by its entry of convictions based upon the Appellant's refusal to enter pleas of guilty and demand for a jury trial. Based upon a review of the record, the briefs and arguments of the parties, as well as all other matters submitted before this Court, we affirm the lower court's decision.

## I. FACTS

The Appellant's original guilty pleas arose out of a May 8, 1988, incident in which the Appellant murdered his ex-girlfriend, Tracey Andrews, shot and wounded Ms. Andrews' boyfriend, Dewey Meyers, and also shot and wounded an innocent bystander, Roger Cox. The Appellant fled the crime scene and ultimately was wounded and captured by police after an exchange of gunfire.

Following indictment on one count of first degree murder and two counts of malicious wounding, the Appellant, while recuperating from gunshot wounds, attempted suicide. *See Hatfield I,* 186 W.Va. at 509, 413 S.E.2d at 164. Subsequent to the suicide attempt, proceedings occurred before the lower court regarding the Appellant's mental competency. *Id.* A competency hearing occurred and in a subsequent order, the lower court determined that the Appellant was competent to stand trial. After the competency determination was made, the Appellant once again attempted to commit suicide. *Id.* at 511, 413 S.E.2d at 166. After this second attempt at suicide occurred, the Appellant decided to plead guilty to all three counts in the indictment. *Id.* The entry of the guilty pleas occurred, despite the Appellant's trial lawyers' advice against it. *Id.* Upon entry of the guilty pleas, the circuit court sentenced the Appellant to life without mercy for first degree murder and two to ten years for each malicious wounding charge. *Id.*

The Appellant originally appealed to this Court "rais[ing] arguments with respect to the appellant's competence and the circuit court's acceptance of the guilty plea." *Id.* In dealing with the issues raised, this Court was concerned not only with the fact that the Appellant had attempted suicide[2] after being adjudged competent to stand trial by the lower court, but also with the fact that the Appellant's guilty plea was entered against the advice of trial counsel. *See id.* at 512, 413 S.E.2d at 167. Consequently, this Court "remanded [this case] to the Circuit Court of Wayne County so that it may further develop the record in light of our opinion herein and particularly syllabus point 6." *Id.* at 514, 413 S.E.2d at 169. The new law enunciated by this Court in syllabus point six of *Hatfield I,* which we specifically directed the lower court to consider on remand, is as follows:

Where a circuit court has found that a defendant in a criminal case where the possible punishment is life imprisonment without mercy is competent to stand trial,

---

1. The final order was entered by Judge Holliday; however, Judge Elliot Maynard was the Special Judge who presided over the original criminal case, as well as the remand proceedings.

2. The briefs filed in the instant case indicate that the Appellant has at least attempted suicide on two more occasions since the case was remanded.

but subsequent to the competency hearing, the defendant attempts to commit suicide, then against advice of counsel indicates his desire to plead guilty to the charges in the indictment, before taking the plea of guilty, the trial judge should make certain inquiries of the defendant and counsel for the defendant in addition to those mandated in *Call v. McKenzie*, 159 W.Va. 191, 220 S.E.2d 665 (1975). The court should require counsel to state on the record the reason why counsel opposes the guilty plea. The court should then ask the defendant to acknowledge on the record that he understands his counsel's statements and if in view of them he still desires to plead guilty. If the defendant then states he still desires to plead guilty, the court may accept the plea.

186 W.Va. at 508, 413 S.E.2d at 163.

On remand, the lower court sought to have the Appellant undergo another psychiatric evaluation by Ralph Smith, M.D., a psychiatrist, in order to "evaluat[e] the competency of the Defendant at the time he entered his guilty plea in December 1989 . . . ." The day after the hearing which resulted in the lower court ordering this additional psychiatric evaluation, the Appellant objected to the evaluation and indicated the he would not participate in it.

■ Consequently, on December 19, 1996, the competency hearing was conducted in which the Appellant's two trial attorneys testified regarding their respective objections to the Appellant's entry of guilty pleas in 1989. Essentially both attorneys argued that the Appellant was not competent to enter a guilty plea, based on the reports of psychologists and psychiatrists who examined the Appellant prior to the lower court's initial competency determination and indicated that the Appellant was intent on self-destruction and was interested only in self-punishment.[3]

Next, the trial court inquired of the Appellant as follows:

> The Court: So I will ask you now, Mr. Hatfield, sir, do you think you are competent today?
>
> . . . .
>
> The Defendant: Yes, sir, I feel competent today, your Honor.
>
> The Court: Okay. Mr. Hatfield, then, in view of that, I would like to ask you, sir, if you can acknowledge on the record that you understand what Mr. Chafin just now said. He was your counsel at the time.
>
> The Defendant: Yes.
>
> The Court: Do you understand what he said?
>
> The Defendant: Yes, I understand what Mr. Chafin said, your Honor.
>
> The Court: Then, based on that, based on what your lawyer has said, and your acknowledgment that you understand it, do you still desire to plead guilty?
>
> The Defendant: No.

---

**3.** The lower court, on remand, reconsidered the following psychological information prior to its determination that the Appellant was competent to stand trial. Earnest Watkins, the Director of Psychology at West State Hospital reported that the Appellant was competent to stand trial, but was not criminally responsible for his actions. *See Hatfield I*, 186 W.Va. at 509–10, 413 S.E.2d at 164–65. Dr. Herbert C. Haynes, a psychiatrist who examined and evaluated the Appellant, reported that the Appellant was not competent to stand trial, but not because the Appellant lacked comprehension of criminal proceedings, but because the Appellant suffers from major depression and an intense need for punishment as extreme as death. Dr. Haynes also found that the Appellant was not criminally responsible for his actions. Dr. Ralph Smith, a psychiatrist determined that the Appellant was competent to stand trial. *See id.* at 510, 413 S.E.2d at 165. Finally, Dr. Johnnie L. Gallemore, Jr., a psychiatrist who treated the Appellant, in a December 18, 1989, letter to the Appellant's trial counsel, stated that his diagnosis was consistent with Dr. Haynes and that the Appellant's decision to plead guilty was "significantly affected" by his illness.

It is significant to note that the standard for whether an individual is competent to stand trial/and or plead guilty is as follows:

> To be competent to stand trial, a defendant must exhibit a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational, as well as factual, understanding of the proceedings against him.' Syllabus Point 2, *State v. Arnold*, [159] W.Va. [158], 219 S.E.2d 922 (1975); Syllabus Point 4, *State ex rel. Williams v. Narick*, [164] W.Va. [632], 264 S.E.2d 851 (1980).

Syl. Pt. 1, *State v. Cheshire*, 170 W.Va. 217, 292 S.E.2d 628 (1982).

The Court: Do you want to withdraw this plea and stand a jury trial?

The Defendant: Yes, I do, your Honor.

Despite the Appellant's desire to withdraw his guilty pleas, the circuit court reaffirmed the earlier guilty pleas, as well as the sentences previously imposed. After reviewing the evidence taken on remand, as well as all of the evidence of record, including the earlier transcripts and reports of psychiatric experts, the lower court determined that the Appellant was competent at the time he entered the guilty pleas on February 27, 1989.

## II. ISSUE

■ The sole issue before the Court is whether this Court in *Hatfield I* vacated the Appellant's earlier guilty pleas or simply ordered the lower court to reconsider the Appellant's guilty pleas in light of more fully developed evidence. The Appellant creatively argues that the decision in *Hatfield I* in essence vacated the original guilty pleas and, thus, the trial court's refusal to allow the Appellant to enter pleas of not guilty violated this Court's directive in *Hatfield I*.[4] In contrast, the Appellee argues that we did not order vacation of the guilty pleas; but rather, we ordered that the lower court to reconsider its earlier decision in light of more fully developed evidence, with the final disposition left with the trial court.

The Appellee directs this Court's attention to our prior decision in *State v. Cheshire*, 170 W.Va. 217, 292 S.E.2d 628 (1982), in support of its argument that the original guilty pleas were not vacated. In *Cheshire*, a case somewhat analogous to the instant proceeding, a defendant was convicted on guilty pleas of two offenses of forgery and uttering. The defendant argued that she was mentally incompetent and that the lower court erred in accepting her pleas and in denying her motion to set aside her convictions. *Id.* at 218, 292 S.E.2d at 628. The psychiatric examinations of the appellant indicated that she was competent to stand trial, but she would be unable to assist in the preparation of her own defense, because she was mentally retarded. *Id.* at 219, 292 S.E.2d at 629.

This Court determined in *Cheshire*, that the trial court failed to make any findings on the appellant's ability to assist counsel and on her understanding of the nature of the proceedings. *Id.* at 222, 292 S.E.2d at 633. The Court, however, did not vacate the appellant's guilty pleas. Instead, we remanded the case and directed the court to conduct another competency hearing so that it could make specific findings on the appellant's ability to assist counsel and on her understanding of the nature of the proceedings against her. *Id.* Unlike the instant case, we further stated in *Cheshire* that "[i]f it is shown by a preponderance of the evidence that the appellant lacks either of these attributes her convictions must be set aside."[5] *Id.* at 223, 292 S.E.2d at 633.

While this Court's language in the instruction to the lower court as to what was to occur on remand in *Hatfield I* may not be a model of clarity, it is outlandish for the Appellant to suggest that we remanded this case to allow the Appellant to plead not guilty. It is clear that this Court's major concern in *Hatfield I* was "[t]he lack of questioning of the appellant by the circuit court

---

**4.** The Appellant maintains that "[t]he actions of the Circuit Court, moreover, created a legal impossibility: convictions, without benefit of trial, based upon pleas of not guilty and a demand for a trial by jury." This argument is valid only if this Court had reversed the Appellant's convictions on appeal. The opinion issued in the first appeal indicates only a remand. We note that the Judgment Order entered in connection with the opinion by the Supreme Court Clerks' Office indicates that "said judgment be, and same is hereby, set aside, reversed and annulled." It is clear from the record, as well as our prior decision in *Hatfield I*, however, that the case was only remanded. The judgment order is simply incorrect and the discrepancy went unnoticed until it was brought to the Court's attention by the Appellee.

**5.** Interestingly, after remand in *Cheshire*, the appellant once again sought relief from this Court which resulted in the second *Cheshire* decision. *See State v. Cheshire*, 173 W.Va. 123, 313 S.E.2d 61 (1984) (referred to as *Cheshire II*). In *Cheshire II*, we upheld the trial court's denial of the appellant's motion to vacate the guilty pleas, because "[t]he trial court on remand conducted further hearings, made detailed findings of fact, and found from a preponderance of the evidence that Cheshire was competent to enter the guilty pleas." *Id.* at 124, 313 S.E.2d at 62.

with regard to the appellant's desire to plead guilty against the advice of counsel and the critical nature of such a decision." 186 W.Va. at 513, 413 S.E.2d at 168. Regarding the lack of questioning by the lower court, we further stated:

> Our review of the record in this case indicates that the inquiry of the appellant by the circuit court, under circumstances of most cases, would be adequate to satisfy the requirements to ensure protections of a defendant's constitutional rights.
>
> However, in this case, there is an overlay to the proceedings in the circuit court which, *if not explored further by that court, may result in severe prejudice to the appellant.* This involves: (1) the second suicide attempt by the appellant; and (2) the appellant's plea of guilty *against the advice of counsel.*

*Id.* at 512, 413 S.E.2d at 167. (Some emphasis added). Moreover, in footnote thirteen of the opinion the Court wrote:

> The appellant also contends that there was an insufficient factual basis to support the guilty plea which was accepted by the circuit court. *Although this case is remanded for further determination with respect to whether the guilty plea was properly taken due to the question of competency,* we believe that the *factual* basis supports acceptance of the guilty plea inasmuch as the allegations, if taken as true, are sufficient to support the convictions therefor.

*Id.* at 514, 413 S.E.2d at 169 n. 13 (Some emphasis added). Obviously, had the Court vacated the guilty pleas, there would have been no need to uphold the factual basis for accepting the guilty pleas. Finally, our instruction to the lower court was that "it . . . further develop the record in light our opinion herein . . . ." *Id.* at 514, 413 S.E.2d at 169.

That this case was simply remanded for further development of the record and not to reverse, vacate, set aside, or otherwise give the Appellant an opportunity to withdraw his original guilty pleas is patently clear from the above-mentioned excerpts. In other words, the remand was clearly for a determination on whether the Appellant was compe-

tent on the date he originally entered his guilty pleas. It would be an absurdity to conclude that the issue on remand was simply whether the Appellant still desired to plead guilty. It was clear from the Appellant's petition for appeal which resulted in the *Hatfield I* decision that the Appellant's desire was to change his guilty pleas and have his convictions reversed. This Court clearly could have granted the Appellant his desired relief in *Hatfield I* without any need for remand, had the Court intended to hinge reversal on whether the Appellant still wanted to plead guilty.

Finally, had this Court meant, in any way, to vacate the Appellant's original guilty pleas, we would have expressly stated such. *See State v. Myers,* 204 W.Va. 449, 464, 513 S.E.2d 676, 692 (1998) ("In view of the matters presented, Mr. Myers' conviction and sentence are reversed. This case is remanded with instructions that he be permitted to withdraw from the plea and his plea agreement."); *State v. Harlow,* 176 W.Va. 559, 561–62, 346 S.E.2d 350, 353 (1986) ("We, therefore, conclude that the relator's request to set aside his pleas made prior to his sentence should have been granted, and a moulded writ of habeas corpus is, therefore, issued directing that his pleas be set aside."); *Cheshire I,* 170 W.Va. at 223, 292 S.E.2d at 633 ("[i]f it is shown by a preponderance of the evidence that the appellant lacks either of these attributes [regarding mental competency] her convictions must be set aside"); *State v. Olish,* 164 W.Va. 712, 717, 266 S.E.2d 134, 137 (1980) ("We, therefore, conclude that the defendant's request to set aside his guilty plea made prior to his sentence should have been granted, and his sentence is reversed for this purpose and the case remanded.").

The trial court, on remand, tried to ascertain further information as to whether the Appellant was competent on the day he originally entered the guilty pleas. In furtherance of this inquiry, the trial court sought to have the Appellant examined by a court-appointed psychiatrist who was to evaluate the Appellant as to his competency on the day the guilty pleas were originally entered in light of everything that had transpired. The Appellant refused to undergo further

psychological evaluation. Thus, the trial court proceeded to hearing in order to resolve the additional inquiry mandated by this Court. The trial court, after making the necessary inquiry dictated in syllabus point six of *Hatfield I*, still found that the Appellant was competent. *See* Syl. Pt. 6, 186 W.Va. at 508, 413 S.E.2d at 163. Consequently, we conclude that the lower court followed this Court's directive on remand and did not deny the Appellant his due process rights in so doing.

Accordingly, based on the foregoing, the decision of the lower court is hereby affirmed.

Affirmed.

Justice MAYNARD, deeming himself disqualified, did not participate in the decision of this case.

Judge DANNY O. CLINE sitting by special assignment.

STARCHER, Chief Justice, dissenting:

(Filed Nov. 10, 1999)

Factually, the majority opinion contains a number of significant errors. First, it refers to the hearing of December 19, 1996, as a competency proceeding. Such is simply not the case. No competency hearing has ever been held regarding the appellant. It is axiomatic that the conviction of a legally incompetent defendant or the failure of the trial court to provide an adequate competency determination violates due process by depriving the defendant of his constitutional right to a fair trial.

The majority opinion (*Hatfield II*) erroneously states that: ". . . [t]he remand was clearly for a determination on whether the appellant was competent on the date he originally entered his guilty pleas." However, the actual language from the prior panel's summary of the written opinion provides otherwise: ". . . [r]emand is required to enable trial court to make certain inquiries of defendant and ask defendant whether he understood counsel's reasons for opposing guilty plea." *State v. Hatfield*, 186 W.Va. 507, 413 S.E.2d 162 (1991) (*Hatfield I* ).

Indeed, had it been the intent of the *Hatfield I* Court to remand for a retrospective competency determination, the Court would have said so. Instead, the Court clearly states that the case was remanded to enable the trial court to make certain inquiries, as provided in Syllabus Point 6 of *Hatfield I*.

Syllabus Point 6 of *Hatfield I* directed that the lower court on remand:

(1) require trial counsel to state on the record, in appellant's presence, reasons for opposing the initial plea of guilty;

(2) ask the appellant to acknowledge on the record whether appellant understands his counsel's statements, and, in view of such statements, whether the appellant persists in his pleas of guilty; and

(3) "[i]f" the [appellant] then states he still desires to plead guilty, the court may accept the plea.

Syllabus Point 6 did not state what specifically should be done "if" the appellant did not persist in his desire to plead guilty. But it was not necessary, in light of the opinion and the judgment order, for the court to do so. It is clear from the prior panel's holding, especially when the opinion and judgment order are read together as a mandate, that the appellant's initial pleas were determined to be invalid, and the appellant was to be permitted the opportunity to plead anew.

The United States Supreme Court has held that where an appellate judgment is silent with respect to the manner in which lower court should proceed on remand from an appellant court, a determination of the scope of the mandate requires a careful reading of the appellant court's opinion because it serves as the statement of reasons upon which the judgment rests and the opinion must read as a whole. *Rogers v. Hill*, 289 U.S. 582, 587, 53 S.Ct. 731, 734, 77 L.Ed. 1385 (1933).

Clearly, if the Court in *Hatfield I* had wanted to require the trial court to conduct a retrospective competency evaluation, it would have done so in the same way that it did in the case cited by the majority, *State v. Cheshire*, 170 W.Va. 217, 292 S.E.2d 628 (1982). The same is true in a number of cases decided by this Court, the most recent being *State*

*v. Lockhart,* 200 W.Va. 479, 490 S.E.2d 298 (1997) where this Court remanded for a proffer of expert testimony regarding dissociative identity disorder; and in *State v. Beard,* 194 W.Va. 740, 461 S.E.2d 486 (1995), where the Court remanded for a *Kastigar* hearing.

If *Hatfield I* had intended remand for the purpose of more fully developed competency evidence, as stated in *Hatfield II,* even then the lower court failed to follow that directive as well. In spite of additional evidence presented upon remand that the appellant was not competent on February 27, 1989—as testified to by his trial counsel at the December 19, 1996 hearing—the circuit court found that he was competent.

The additional evidence before the lower court upon remand regarding competency at the time of the initial 1989 pleas was based on statements of psychiatrist Johnnie Gallemore, M.D. Attorneys Ray Hampton and Lafe Chafin testified that Dr. Gallemore had reported to them that on the very morning of the plea, having had direct contact with the appellant, that it was Gallemore's opinion that the appellant's choice to plead guilty to the charges against him was significantly affected by his illness, and that he lacked the capacity on February 27, 1989, to intelligently and knowingly enter a plea of guilty.

It is clear that *Hatfield I* did not remand for the purpose of a retrospective competency determination and, even if it did, the trial court made its competency finding based only upon *prima facie* evidence the appellant was not competent.

Notwithstanding the fact that no retrospective competency determination was part of the remand, the majority opinion makes much of the alleged fact that the appellant refused to participate in the retrospective competency evaluation scheduled by the circuit court. The parties agreed upon remand to a determination of appellant's current competence in 1996. The circuit judge, *sua sponte,* added the question of appellant's competence in 1989, and to that appellant objected. In a letter to the court, prepared and entered by counsel, the appellant declined to participate in a retrospective evaluation. The court was informed prior to the December 19, 1996 hearing that the defendant would, in fact, participate in a contemporaneous competency evaluation, and the circuit court declined to have same done.

The majority opinion also characterizes the testimony of the appellant's trial counsel, Lafe Chafin and Ray Hampton as argument, when the record clearly shows that, in strict compliance with the directive in *Hatfield I,* Messrs. Chafin and Hampton testified under oath as to their reasons for opposing appellant's desire to enter pleas of guilty. Their testimony was evidence, not argument.

The majority opinion also states that the sole issue before the court was whether *Hatfield I* vacated and reversed appellant's conviction, or simply ordered the circuit court to reconsider appellant's guilty pleas in light of further evidence. Assuming, *arguendo,* that the court's seemingly unambiguous judgment order, which "set aside, reversed and annulled" the appellant's convictions was "simply incorrect," the language of the opinion in *Hatfield I* makes it clear that the court determined the plea colloquy to be incomplete, and as a consequence the conviction was constitutionally infirm.

The majority opinion states in a footnote that the judgment order in *Hatfield I* which "set aside, reversed and annulled" the conviction was "simply incorrect." However, this Court has before it an affidavit from former Justice Richard Neely, supportive of both appellant's position on the meaning of the opinion and that the judgment order was written.[1]

---

1.    AFFIDAVIT
STATE OF WEST VIRGINIA;
COUNTY OF KANAWHA, TO WIT:
   Richard Neely, having been duly sworn, states and deposes as follows:
   1. I am a practicing attorney licensed to practice in the State of West Virginia and I am a former member of the West Virginia Supreme Court of Appeals.

   2. In my capacity of a justice of the West Virginia Supreme Court of Appeals, I participated in hearing the case of *State v. Hatfield,* as reported at 186 W.Va. 507 [413 S.E.2d 162] (1991) (hereinafter Hatfield I).
   3. At the request of Thomas W. Smith, counsel for Stephen W. Hatfield, I have been asked to present my understanding of the court's decision

The majority opinion also omits the last sentence of footnote 13 of *Hatfield I*. There, the *Hatfield I* Court concludes its ruling on the factual basis and the motion to continue issues by stating: "... [t]here is obviously no prejudice in this regard in light of our remand."

Notwithstanding the clear language of the mandate by the unanimous court in *Hatfield I* (that case was set aside, reversed and annulled) the majority opinion points to two excerpts from the *Hatfield I* opinion in support of its premise that "it is patently clear" that the *Hatfield I* court did not vacate, set aside or otherwise give the appellant an opportunity to withdraw his pleas:

Our review of the record in this case indicate that the inquiry of the appellant by the circuit court, under the circumstances of most cases, would be adequate to satisfy the requirements to insure protections of a defendant's constitutional rights.

However, in this case, there is an overlay to the proceedings in the circuit court which, *if not explored further by the court, may result in severe prejudice to the appellant.* This includes: (1) the second suicide attempt by the appellant; and, (2) the appellant's plea of guilty *against the advice of counsel.*

186 W.Va. at 512, 413 S.E.2d at 167 (emphasis added).

The appellant also contends that there was an insufficient factual basis to support the guilty plea which was accepted by the circuit court. *Although this case is remanded for further determination with respect to whether the guilty pleas was properly taken due to the questions of competency,* we believe that the factual basis supports acceptance of the guilty plea inasmuch as the allegations, if taken as true, are sufficient to support the convictions therefor.

186 W.Va. at 514, 413 S.E.2d at 169 (emphasis added).

However, when read in entirety, the *Hatfield I* opinion reveals that this Court "found error" in the plea taking procedures by the trial court, due to questions of competency for two major reasons: (1) the appellant's second suicide attempt (after the lower

---

and intentions in *State v. Hatfield,* supra, which are as follows, herein.

4. My review of the decision and the order require me respectfully to disagree with the representations contained in the slip opinion in *State v. Hatfield,* No. 25368 (hereinafter Hatfield II), released July 16, 1999, as to the intention of the unanimous court in remanding the matter to the circuit court.

5. Given the issues raised and the facts presented in Hatfield I, it was the intention of the court to remand the matter for further development of the record in the areas of the bases for trial counsels' objections to Mr. Hatfield's pleas, Mr. Hatfield's on-the-record acknowledgment of the objections and, then after considering the same, to determine whether he wished to enter a plea of guilty. This is all contained in syllabus point 6 of Hatfield I.

6. The holding of the court was that on the facts presented the plea colloquy was insufficient and that only after trial counsel was heard from and Mr. Hatfield was queried about his understanding of counsels' objections could the circuit court accept a guilty plea from Mr. Hatfield if it was then still his desire to plead guilty.

7. Under the decision, if Mr. Hatfield had opted to persist in his plea of guilty, the court could have accepted the plea after a full and fair colloquy. However, it was my intention that if Mr. Hatfield declined to plead guilty the counts would be tried.

8. The Hatfield II opinion states that the fact that the Hatfield I court ruled on the sufficiency of the factual basis issue supports the conclusion that it was never the intention of the Hatfield I court to vacate or set aside the conviction. Such is not the case. First, Mr. Hatfield raised the issue of sufficiency on appeal, so that issue was ripe for resolution. Second, had Mr. Hatfield opted to persist in his plea of guilty after the court's directives had been complied with, the question of sufficiency of the factual basis would have been helpful to the circuit court in making an appropriate record.

9. The court's opinion in Hatfield II states in a footnote that the judgment order in the case which "set aside, reversed and annulled" Mr. Hatfield's conviction was a mistake. I would respectfully disagree and note that the judgment order is consistent with the opinion and that, had a majority of the court opted to affirm the convictions, I would have dissented.

FURTHER THE DEPONENT SAITH NAUGHT.

_____

Richard Neely

Taken, subscribed and sworn to before me in my said County and State this the 27 day of August, 1999.

_____

Notary Public

My Commission expires November 29, 2005.

court's finding of competency to stand trial); and (2) the appellant's desire to plead guilty *against the strident advice of counsel.* Accordingly, the *Hatfield I* court, in its judgment order, set aside, reversed and annulled the pleas and remanded (in its opinion at Syllabus Point 6) to "explore further," whether the appellant, after hearing the objections of his counsel and acknowledging that he understood them, still wished to persist in his earlier desire to plead guilty.

*Hatfield I* thus determined that the appellant could suffer "severe prejudice" because statutory and constitutional standards for plea taking were violated by the trial court's failure to conduct a hearing regarding the "second suicide attempt," and the trial court's "failure to place on the record appellant's statement and acknowledgment as to his pleas against counsel advice."

For the foregoing reasons, I respectfully dissent. I am authorized to state that Justice McGraw joins in this dissent.