490 S.E.2d 298

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Carl E. LOCKHART, Defendant Below, Appellant.**

No. 23843.

Supreme Court of Appeals of West Virginia.

Submitted June 3, 1997.

Decided June 19, 1997.

Dean A. Furner Spilman, Thomas & Battle, Parkersburg, for Appellant,

Darrell V. McGraw, Jr., Attorney General, Rory L. Perry, II, Assistant Attorney General, Charleston, for Appellee.

PER CURIAM:

This case is before this Court upon an appeal from the final order of the Circuit Court of Wood County, West Virginia, entered on March 1, 1996. In 1995, the appellant, Carl E. Lockhart, was found guilty by a jury in that court of the offenses of sexual assault in the first degree, battery, burglary and assault during the commission of a felony. Following those convictions, a recidivist proceeding was instituted against the appellant in the circuit court wherein another jury determined that the appellant had been convicted of two prior felonies. As reflected in the final order, the appellant was sentenced upon the 1995 convictions, and upon the recidivist proceeding, to various consecutive terms of incarceration, including a sentence of confinement in the penitentiary for life.

In this appeal, the appellant contends, primarily, that the circuit court committed error by refusing to permit him to present an insanity defense to the jury based upon a theory that, at the time of the events in question, he was suffering from a mental impairment known as "Dissociative Identity Disorder" (also known as "Multiple Personality Disorder") which precluded his criminal responsibility for his actions.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. Significantly, we note that the circuit court, in not permitting the insanity defense to be presented, failed to allow counsel for the appellant to proffer into the record, through the testimony of his principal witness, evidence concerning the nature of Dissociative Identity Disorder and the relevance of that disorder to the appellant. Consequently, the record before this Court is wholly inadequate in terms of reviewing whether the circuit court acted correctly in disallowing the presentation of the appellant's insanity defense.

Accordingly, rather than setting aside the appellant's convictions upon the above offenses, we remand this case to the circuit court to enable counsel for the appellant to make a complete evidentiary proffer from the appellant's witness upon the theory of Dissociative Identity Disorder and its relevance to the appellant. If, upon completion of the proffer, the circuit court is of the opinion that the appellant's insanity defense should not be presented to a jury, the circuit court shall make an appropriate disposition of the appellant in conformity with the above convictions, subject to a discretionary appeal to this Court. If, however, the circuit court is of the opinion that it committed error in not allowing such a defense to be presented, the circuit court shall award the appellant a new trial.

In so holding, we note that, for the reasons stated below, all other issues raised by the appellant in this appeal are without merit.

I

On August 12, 1994, at approximately 11:30 p.m., Ms. Anne P. arrived at her apartment in the City of Parkersburg, Wood County, after leaving her employment at Camden–Clark Hospital for the evening.[1] Almost immediately thereafter, she was attacked by a stranger who had entered the apartment by way of a balcony. The assailant repeatedly struck Anne P. with his fists, threatened to kill her and pushed her into her bedroom where he pulled off her clothes. The assailant then forced her to perform oral sex upon him. During these events, Anne P.

---

1. Consistent with our practice in cases involving sensitive matters, we use the victim's initials.

*State v. Miller,* 195 W.Va. 656, 659 n. 1, 466 S.E.2d 507, 510 n. 1 (1995).

screamed and resisted the assailant and was overheard by security guards patrolling in a nearby area. According to the evidence of the State, as the security guards approached the apartment, they saw the appellant fleeing the premises with his pants undone. The security guards caught the appellant and held him until the police arrived. Anne P. was taken to Camden–Clark Hospital for medical treatment. At the hospital, it was determined that, in addition to being obviously upset, Anne P. had sustained bruises to the head, a cut lip, abrasions on her knees and was experiencing pain in her neck. While in custody, the appellant gave a statement to the police in which he confessed to the attack.

Following his indictment in January 1995, the appellant filed a motion to determine his criminal responsibility concerning the above events and his competency to stand trial. *W. Va.Code*, 27–6A–1 [1983]. The motion indicated that the appellant had a history of sexual offenses and psychiatric problems and that, in particular, he suffered from Multiple Personality Disorder. The diagnosis of Multiple Personality Disorder was evidenced by a 1988 report from Dr. Harry J. Coffey, a psychologist in Parkersburg. The circuit court granted the appellant's motion and ordered that the appellant again be seen by Dr. Coffey. In addition, the circuit court ordered that the appellant be examined by Dr. Mario R. Schwabe, a psychiatrist in Parkersburg.

As reflected in their respective written reports, both Dr. Coffey and Dr. Schwabe agreed that the appellant was competent to stand trial. Consequently, the circuit court so ruled in July 1995. However, Dr. Coffey and Dr. Schwabe disagreed with regard to the appellant's criminal responsibility. According to Dr. Schwabe, the possible existence of "other personalities" within the appellant did not affect his criminal responsibility. On the other hand, Dr. Coffey's report stated that "because of the existence of a severe mental disease or defect, Dissociative Identity Disorder (Multiple Personality Disorder), Mr. Lockhart is not criminally responsible for the sexual assault [.]" The circuit court thus indicated that the

jury would hear "the opinions of the professionals," and the appellant filed a notice that he intended to rely upon an insanity defense. *W. Va. R.Crim. P.* 12.2.

The appellant's trial began on November 6, 1995, and, during the State's case-in-chief, the above facts concerning the attack on Anne P. were developed before the jury. In addition, the appellant's statement to the police was admitted into evidence. At the close of the State's case-in-chief the appellant moved for a judgment of acquittal. That motion, however, was denied.

The appellant's first witness was Dr. Lee L. Neilan, a psychiatrist from Charleston, West Virginia. Dr. Neilan testified that she conducted a two hour examination of the appellant on November 2, 1995, and that based upon that examination, and upon a consideration of the appellant's medical records, the appellant suffered from "Dissociative Disorder Not Otherwise Specified" at the time of the events in question. Dr. Neilan qualified her testimony, however, by stating that her diagnosis was different from a diagnosis of Dissociative Identity Disorder. As Dr. Neilan specifically stated: "[T]here is a catch-all group called disassociation disorder, dissociative disorder, but it is called 'not otherwise specified,' which is a catch-all category which includes people who do not meet the full criteria for a dissociative identity disorder, but have some of the characteristics of that disorder." The State objected to Dr. Neilan's testimony, and an *in camera* discussion was then conducted. During the discussion, the circuit court concluded that the testimony of Dr. Neilan was speculative and without foundation with regard to the issue of the appellant's criminal responsibility. Accordingly, the circuit court struck Dr. Neilan's testimony from the trial and instructed the jury to disregard that testimony.

During the *in camera* discussion, the anticipated testimony of Dr. Coffey, another witness for the appellant, was also considered. Concluding that it was not going to allow Dissociative Identity Disorder to be used as the basis of an insanity defense under any set of circumstances, the circuit court ruled that Dr. Coffey would not be permitted to testify. In addition, in spite of

requests by appellant's counsel, the circuit court declined to allow the appellant to proffer into the record the testimony of Dr. Coffey concerning the nature of Dissociative Identity Disorder and the relevance of that disorder to the appellant. Instead, counsel for the appellant was permitted to state for the record a profile or summary of Dr. Coffey's testimony, including the determination that an "alter identity" of the appellant was Anne P.'s assailant.

As a result of the *in camera* hearing, the appellant became the sole witness to testify for the defense. His testimony consisted chiefly of stating that he had been drinking on the night in question and had no memory of the events leading to his arrest and indictment. The theory of Dissociative Identity Disorder was not developed. At the conclusion of the trial, the jury found the appellant guilty of sexual assault in the first degree, battery, burglary and assault during the commission of a felony. *W. Va.Code,* 61–8B–3 [1991]; *W. Va.Code,* 61–3–11 [1993]; *W. .Va.Code,* 61–2–10 [1931].

Following the trial, the State filed an information with the circuit court alleging that the appellant had been convicted of two prior felonies. *W. Va.Code,* 61–11–19 [1943]. Specifically, the information alleged that the appellant was convicted in 1989 in Wood County of the felony offense of abduction and that the appellant was convicted in 1977 in Wood County of the felony offense of sexual assault in the second degree. *W. Va.Code,* 61–2–14 [1984]; *W. Va.Code,* 61–8B–4 [1976]. Pursuant to an order entered on November 16, 1995, the circuit court directed that the information be served upon the appellant and that a copy of the information be mailed to his counsel. Subsequently, on February 26, 1996, a jury trial was conducted upon the information, at the conclusion of which the jury found that the appellant, who had been convicted of the offenses relating to Anne P., was the same individual who had been convicted of the 1989 and 1977 offenses.

As reflected in the final order of March 1, 1996, the appellant was sentenced as follows: (1) fifteen to thirty-five years for sexual assault in the first degree, (2) one year for the offense of battery, (3) life imprisonment for the offense of burglary and (4) two to ten years for the offense of assault during the commission of a felony, the sentences to run consecutively.

## II

In syllabus point 2 of *State v. Milam,* 163 W.Va. 752, 260 S.E.2d 295 (1979), this Court recognized that, although a presumption of sanity exists in the trial of an accused, "should the accused offer evidence that he was insane, the presumption of sanity disappears and the burden is on the prosecution to prove beyond a reasonable doubt that the defendant was sane at the time of the offense." *See also* syl. pt. 6, *State v. McWilliams,* 177 W.Va. 369, 352 S.E.2d 120 (1986); syl. pt. 2, *State v. Kinney,* 169 W.Va. 217, 286 S.E.2d 398 (1982).

■■■ In this case, the appellant sought to present an insanity defense to the jury based upon a theory that, at the time of the events in question, he was suffering from a mental impairment known as Dissociative Identity Disorder. According to the appellant, that mental impairment rendered him not criminally responsible for the events on the night in question. Thus, as this Court observed in syllabus point 3 of *State v. Parsons,* 181 W.Va. 131, 381 S.E.2d 246 (1989):

'When a defendant in a criminal case raises the issue of insanity, the test of his responsibility for his act is whether, at the time of the commission of the act, it was the result of a mental disease or defect causing the accused to lack the capacity either to appreciate the wrongfulness of his act or to conform his act to the requirements of the law ...' Syllabus point 2, in part, *State v. Myers,* 159 W.Va. 353, 222 S.E.2d 300 (1976).

*See also* syl. pt. 7, *State v. Koon,* 190 W.Va. 632, 440 S.E.2d 442 (1993). In particular, as this Court held in syllabus point 5 of *McWilliams, supra:* "When the accused's mental condition at the time of the offense is an issue, evidence of the accused's mental condition either before or after the offense is admissible so far as it is relevant to the accused's mental condition at the time of the

offense." *See also* syl. pt. 1, *State v. Neal,* 179 W.Va. 705, 371 S.E.2d 633 (1988).

Specifically, the appellant contends that the circuit court committed error by refusing to permit him to present an insanity defense to the jury based upon Dissociative Identity Disorder. As the appellant indicated at trial, that defense would have been presented, primarily, through the testimony of Dr. Coffey, who was of the opinion that the appellant suffered from that problem.

In *State v. McCoy,* 179 W.Va. 223, 366 S.E.2d 731 (1988), this Court recognized that the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* is a "widely recognized reference for diagnosing mental disorders." 179 W.Va. at 226 n. 4, 366 S.E.2d at 734 n. 4. The 4th edition of that *Manual* sets forth the following discussion of Dissociative Identity Disorder:

> Dissociative Identity Disorder reflects a failure to integrate various aspects of identity, memory, and consciousness. Each personality state may be experienced as if it has a distinct personal history, self-image, and identity, including a separate name. Usually there is a primary identity that carries the individual's given name and is passive, dependent, guilty, and depressed. The alternate identities frequently have different names and characteristics that contrast with the primary identity (e.g., are hostile, controlling, and self destructive). Particular identities may emerge in specific circumstances and may differ in reported age and gender, vocabulary, general knowledge, or predominant affect. Alternative identities are experienced as taking control in sequence, one at the expense of the other, and may deny knowledge of one another, be critical of one another, or appear to be in open conflict. Occasionally, one or more powerful identities allocate time to others. Aggressive or hostile identities may at times interrupt activities or place the others in uncomfortable situations.

In response to the appellant's assignment of error, the State asserts that, although various individuals in society may suffer from Dissociative Identity Disorder, its use as a legal defense to criminal responsibility is highly debatable, and, consequently, the circuit court acted within its discretion in excluding the defense. In that regard, we note that several courts in other jurisdictions have discussed Dissociative Identity Disorder or Multiple Personality Disorder, and a few have indicated that, in certain circumstances, it may constitute a defense to criminal responsibility. *See, e.g., United States v. Denny–Shaffer,* 2 F.3d 999 (10th Cir.1993), evidence sufficient to submit multiple personality disorder to the trier of fact; *Kirkland v. State of Georgia,* 166 Ga.App. 478, 304 S.E.2d 561 (1983), multiple personality disorder discussed; *State v. Rodrigues,* 67 Haw. 70, 679 P.2d 615, *cert. denied,* 469 U.S. 1078, 105 S.Ct. 580, 83 L.Ed.2d 691 (1984), question of defendant's multiple personality syndrome was for the jury to determine. *See also State v. L.K.,* 244 N.J.Super. 261, 582 A.2d 297 (1990); *State v. Grimsley,* 3 Ohio App.3d 265, 444 N.E.2d 1071 (1982); *State v. Wheaton,* 121 Wash.2d 347, 850 P.2d 507 (1993). This Court, however, has found no clear consensus in the legal community concerning Dissociative Identity Disorder.

■ As the petition for appeal in this case recognizes, certainly this Court need not give a stamp of approval upon all of the many mental illnesses which could constitute an insanity defense before those illnesses may be presented in a criminal trial. Here, however, the denial of the appellant's insanity defense, based upon Dissociative Identity Disorder, was, in addition, followed by a denial of counsel for the appellant's request to proffer into the record the testimony of the appellant's principal witness upon that subject, Dr. Coffey. Manifestly, a proffer of Dr. Coffey's testimony would have better enabled the circuit court, and this Court upon review, to determine whether the Dissociative Identity Disorder theory should have been presented to the jury. In the absence of that proffer, and with only a few medical reports and counsel for the appellant's summary of Dr. Coffey's evidence before us, this Court is now faced with reviewing a rather novel theory of insanity, in a major criminal prosecution involving a brutal attack upon the victim and a life sentence imposed upon the accused, upon

a wholly inadequate record. Such a review at this point would, therefore, be inappropriate, the summary of counsel for the appellant concerning the evidence constituting "too tenuous a premise upon which to anchor any steady standard of law." *State ex rel. J.L.K. v. R.A.I.,* 170 W.Va. 339, 346, 294 S.E.2d 142, 149 (1982).

The proffer of Dr. Coffey's specific testimony concerning Dissociative Identity Disorder, and its relevance to the appellant, is, thus, needed, subject to the admonition that it must be of sufficient quality and quantity to enable the circuit court, and this Court, to rule intelligently upon the issue. *State v. Boyd,* 167 W.Va. 385, 391, 280 S.E.2d 669, 676 (1981). *See generally* 2 F.D. Cleckley, *Handbook on West Virginia Criminal Procedure* p. 105–41 (2nd ed., Michie 1993).

■ Although in the context of civil actions, this Court, in syllabus point 2 of *South Side Lumber Co. v. Stone Construction Co.,* 151 W.Va. 439, 152 S.E.2d 721 (1967), set forth the following principle, which is comparable to these circumstances: "When the record in an action or suit is such that an appellate court can not in justice determine the judgment that should be finally rendered, the case should be remanded to the trial court for further development." *See also* syl. pt. 2, *State v. Bosley,* 159 W.Va. 67, 218 S.E.2d 894 (1975), stating that appellate review of a ruling of a circuit court "is limited to the very record there made [.]"

In that regard, therefore, and in the context of the requirements of *Milam, Parsons* and *McWilliams, supra,* concerning the insanity defense, we remand this case to the circuit court to enable counsel for the appellant to make a complete evidentiary proffer of Dr. Coffey's evidence concerning Dissociative Identity Disorder and its relevance to the appellant. If, upon completion of the proffer, the circuit court is of the opinion that the appellant's insanity defense should not be presented to a jury, the circuit court shall make an appropriate disposition of the appellant in conformity with the above convictions, subject to a discretionary appeal to this Court. If, however, the circuit court is of the opinion that it committed error in not allowing such a defense to be presented, the cir-

cuit court shall award the appellant a new trial. *See State v. Richards,* 195 W.Va. 544, 466 S.E.2d 395 (1995).

■ In so holding, this Court is of the opinion that the circuit court did not commit error in striking Dr. Neilan's testimony from the trial and instructing the jury to disregard that testimony. As this Court has often stated, rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion. Syl. pt. 2, *State v. Franklin,* 191 W.Va. 727, 448 S.E.2d 158 (1994); *State v. Slaman,* 189 W.Va. 297, 431 S.E.2d 91 (1993); syl. pt. 2, *State v. Perolis,* 183 W.Va. 686, 398 S.E.2d 512 (1990). Here, the appellant sought to present an insanity defense to the jury based upon Dissociative Identity Disorder, as diagnosed by Dr. Coffey. Dr. Neilan, however, who was called as a witness by the appellant, stated that the appellant did not meet the full criteria of that impairment and, instead, suffered from Dissociative Disorder Not Otherwise Specified. The circuit court found Dr. Neilan's testimony to be speculative and without foundation with regard to the issue of the appellant's criminal responsibility. Upon review, Dr. Neilan's testimony appears to be rather confusing, and, although that testimony may have been marginally helpful to the appellant upon the question of his sanity, we conclude that the ruling of the circuit court was "protected by the parameters of sound discretion." *Parker v. Knowlton Construction Company,* 158 W.Va. 314, 329, 210 S.E.2d 918, 927 (1975). As syllabus point 1 of *Siever v. Coffman,* 80 W.Va. 420, 92 S.E. 669 (1917), makes clear: "Evidence which is immaterial and irrelevant to any issue in the case, and which tends to raise immaterial issues or to becloud the real issue, should be rejected." *See also Ward v. Smith,* 140 W.Va. 791, 816, 86 S.E.2d 539, 552–53 (1955); syl. pt. 5, *Hollen v. Crim & Peck,* 62 W.Va. 451, 59 S.E. 172 (1907).

### III

■ The remaining issues raised by the appellant include an assertion that, during the trial upon the indictment, the circuit

court committed error in denying the appellant's motion challenging a potential juror for cause because she was employed by the police department of the City of Parkersburg, in which city the events in question occurred. In *State v. West*, 157 W.Va. 209, 200 S.E.2d 859 (1973), this Court held that, in a criminal case, it is reversible error for a circuit court to overrule a challenge for cause to a juror who is an employee of a "prosecutorial or enforcement agency" of this State. In this case, however, an individual voir dire was conducted of the juror in question, and it was determined (1) that her work solely concerned parking meters and parking tickets, (2) that her place of employment was located on a different floor of the building in which the police department was located and (3) that the work which she had been doing for five years was "just recently . . . put under the police department." That juror was ultimately struck and did not serve upon the petit jury in the appellant's case. During the individual voir dire, however, she indicated that she could render a verdict impartially and upon the evidence adduced at trial. In *State v. White*, 171 W.Va. 658, 301 S.E.2d 615 (1983), this Court held that the record did not support a criminal defendant's assertion that a former deputy sheriff should be excused from a jury venire for cause. Similarly, under the circumstances of this case, this Court is of the opinion that the appellant's assertion concerning the denial of the motion to strike for cause is without merit.

The appellant next contends that, during the trial upon the indictment, the circuit court committed error in not granting his motion for judgment of acquittal because the State failed to present sufficient evidence of serious bodily injury concerning Anne P. According to *W. Va.Code*, 61–8B–3(a)(1) [1991], one of the elements of sexual assault in the first degree is the infliction of "serious bodily injury." *See also W. Va.Code*, 61–8B–1 [1986]. As stated above, however, the assailant repeatedly struck Anne P. during the attack, and she sustained bruises to the head, a cut lip, abrasions on her knees and experienced pain in her neck. Moreover, the pho-

tographs of Anne P.'s face, taken after the attack and admitted into evidence at trial clearly demonstrate serious bodily injury. The appellant's contention concerning bodily injury is, therefore, notably unconvincing.[2]

In addition, the appellant asserts that the circuit court committed error in not properly instructing the jury concerning sexual assault in the first degree, i.e., in failing to differentiate for the jury psychological injury and bodily injury, and in not ruling that the use of a weapon is required in order to sustain a conviction of assault during the commission of a felony. The instructions to the jury concerning sexual assault in the first degree, however, substantially followed the language of *W. Va.Code*, 61–8B–3 [1991], and as this Court held in syllabus point 8 of *State v. Slie*, 158 W.Va. 672, 213 S.E.2d 109 (1975): "An instruction for a statutory offense is sufficient if it adopts and follows the language of the statute, or uses substantially equivalent language and plainly informs the jury of the particular offense for which the defendant is charged." *See also* syl. pt. 8, *State v. Banjoman*, 178 W.Va. 311, 359 S.E.2d 331 (1987). Moreover, with regard to assault during the commission of a felony, nothing in the express language of *W. Va. Code*, 61–2–10 [1931], concerning that offense, requires as an element thereof the use of a weapon. As *W. Va.Code*, 61–2–10 [1931], provides: "If any person in the commission of, or attempt to commit a felony, unlawfully shoot, stab, cut or wound another person, he shall be guilty of a felony [.]" Upon a review of the record herein, and particularly in view of the injuries inflicted, it is clear that the jury had a basis for concluding that the assailant wounded Anne P. during the commission of a felony. Consequently, the appellant's assertions are without merit.

Finally, the appellant contends that the circuit court committed error in failing to read the information to him prior to his recidivist trial. As indicated above, however, prior to the recidivist trial the circuit court directed that the information be served upon

---

**2.** One of the security guards who found Anne P. after the incident testified as follows: "[S]he was very badly beaten. Her face was pretty well

messed up. She had a lot of tears, blood. Her lip was cracked."

the appellant and that a copy of the information be mailed to his counsel. Moreover, on February 22, 1996, prior to the trial, a hearing was conducted during which the circuit court concluded that the appellant had not been prejudiced by the failure to read the information. Upon review of the entire record in this matter, this Court is of the opinion that the appellant was fully informed of the nature of the recidivist proceedings against him and that the circuit court ruled correctly in rejecting the alleged error.

Upon all of the above, this case is remanded to the Circuit Court of Wood County to enable counsel for the appellant to make a complete evidentiary proffer of Dr. Coffey's evidence concerning Dissociative Identity Disorder and its relevance to the appellant. All other issues raised by the appellant in this appeal are without merit.

Affirmed, in part, and remanded.