# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Timothy P. Shafer,**
**Petitioner Below, Petitioner**

**FILED**
**February 9, 2018**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 17-0439** (Kanawha County 16-P-343)

**Karen Pszczolkowski, Warden,**
**Northern Correctional Center,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Timothy P. Shafer, by counsel Matthew A. Victor, appeals the Circuit Court of Kanawha County's Final Order Denying Petitioner's Amended Petition for Writ of Habeas Corpus, entered on April 25, 2017. Respondent Karen Pszczolkowski, Warden, Northern Correctional Center, by counsel Zachary Aaron Viglianco, filed a response. On appeal, petitioner argues that (1) he received ineffective assistance from his trial counsel, and (2) the State violated the terms of its plea agreement with petitioner by arguing in favor of the sentence imposed by the circuit court when responding to petitioner's direct appeal to this Court.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Factual and Procedural Background

Pursuant to a plea agreement in July of 2014, petitioner pled guilty to one count of first-degree murder in the commission of a first degree robbery (felony murder), one count of conspiracy, three counts of burglary by breaking and entering, and two counts of grand larceny. In exchange, the State agreed to recommend that the circuit court sentence petitioner to life in prison with mercy on the felony murder charge, and to stand silent on whether his remaining sentences should run consecutively or concurrently to one another. The parties' agreement was not binding on the circuit court. Additionally, the agreement was silent as to positions the parties may advance on appeal, should an appeal be taken.

Following a lengthy colloquy, the circuit court accepted petitioner's guilty plea. Consistent with the parties' agreement, the State recommended that petitioner receive mercy. Despite the recommendation, the circuit court sentenced petitioner to a life sentence without mercy for felony murder, an indeterminate sentence of one to five years for conspiracy, one to

1

fifteen years on each conviction for burglary by breaking and entering, and one to ten years on each conviction for grand larceny. The circuit court ordered that the sentences run consecutively.

Thereafter, petitioner filed a direct appeal to this Court, challenging his sentence as disproportionate to his offenses. In affirming petitioner's sentence, this Court described the factual background of petitioner's offenses as follows:

In early 2014, Mr. Shafer was a drug addict, using heroin and methamphetamine. He contends that his girlfriend at the time, Megan Hughes, was also addicted to drugs and that they would use drugs together.

Mr. Shafer, Ms. Hughes, and a friend of the couple, Jessica Wilson, conspired to rob Nancy Lynch ("the victim") of money to buy illegal drugs. The victim was sixty-six years old, and she lived alone with her dog, Hazel, in St. Albans, West Virginia. Mr. Shafer claimed he and Ms. Hughes got the idea to rob the victim after he and Hughes had a chance encounter with the victim. During the encounter, the victim told Mr. Shafer and Ms. Hughes that she had been robbed three or four times in the past but that she did not report the robberies because she feared repercussions from the robbers.

Sometime on the evening of January 3 or 4, 2014, Mr. Shafer and Ms. Wilson decided to rob the victim in her home. Mr. Shafer maintains that he targeted the victim because he did not believe she would report the robbery. There is no evidence in the record to suggest that Mr. Shafer or Ms. Wilson were under the influence of drugs at this time. Mr. Shafer and Ms. Wilson left on foot from Ms. Wilson's home. According to Mr. Shafer, he took a toy gun and put it in his pants, intending to use it to threaten the victim. He contended that Ms. Wilson took a long kitchen knife and put it in her pants. Neither Mr. Shafer nor Ms. Wilson wore masks or gloves. Mr. Shafer claims that he did not believe any violence would be necessary to rob the victim.

When Mr. Shafer and Ms. Wilson arrived at the victim's home, the victim was not there. They waited for her, and she later returned home from a shopping trip to K–Mart. Mr. Shafer, Ms. Wilson, and the victim spoke together outside the home until Mr. Shafer lifted his shirt so that the victim could see the gun and insisted that they all go into the house. Mr. Shafer later told police that the victim did not take him seriously. In response to the victim's indifference, he asserts that Ms. Wilson pulled the knife out of her pants and pushed the victim inside. Once inside the house, Ms. Wilson demanded money and pills. The victim told Ms. Wilson that she had $13 in her purse, but upon inspection of the purse, Ms. Wilson found $16 and an ATM card. According to Mr. Shafer, Ms. Wilson ordered the victim to provide her with the pin number to the card, but the victim responded with a string of different numbers.

Mr. Shafer theorized that Ms. Wilson was angered by the victim's lies about the amount of money in the purse and the ATM card pin number. He told

2

police that Ms. Wilson told him to look away, and that as soon as he looked away, Ms. Wilson began quickly stabbing the victim in the chest and neck area. Mr. Shafer said he turned around as soon as he heard the stabbing and watched Ms. Wilson stab the victim to death. The victim was stabbed nineteen times. After the victim fell to the floor, Ms. Wilson covered her with a blanket. Ms. Wilson put the victim's dog, which had been outside during the attack, in the house.

Directly after the killing, Mr. Shafer and Ms. Wilson left the victim's house with the victim's ATM card, two pistols, a camera with lenses, jewelry, and prescription medications. They tried to withdraw cash using the ATM card, but the pin numbers they tried failed. They returned to Ms. Wilson's home where Ms. Hughes was waiting. Ms. Hughes sorted through the stolen property. Mr. Shafer and Ms. Wilson then went back to the victim's home to steal one of the victim's cars. Mr. Shafer used the stolen car to drive to a separate location where he traded the victim's property for heroin, prescription narcotics, and $150. He used the money he acquired to buy methamphetamine from another person. Upon acquiring the drugs, Mr. Shafer drove back to Ms. Wilson's home where he, Ms. Wilson, and Ms. Hughes used the drugs.

The next day, Mr. Shafer returned to the victim's home with Ms. Hughes. They took jewelry, pills, a flat-screen television, and the victim's checkbook from the home. Within a week of the victim's death, Mr. Shafer and Ms. Hughes again went to the victim's home to take the victim's second car. Mr. Shafer asserted that the victim's dog was alive during these trips. Mr. Shafer, Ms. Wilson, and Ms. Hughes pawned the victim's jewelry, sold one of the two cars for scrap, and Mr. Shafer used the victim's checkbook to write six checks to himself.

Sometime during the weeks following the victim's death, Mr. Shafer took the victim's mail, which had been accumulating in her mailbox, after Ms. Wilson told him she had seen a police officer near the house. A neighbor who was concerned that she had not seen the victim called the police. The police visited the victim's home twice but could see no evidence of foul play and noted that the victim's doors were locked.

A friend discovered the victim's decaying body on January 26, 2014. The friend had gone to the victim's home to check on her. When she arrived at the home, she found a door unlocked and went inside. In addition to finding her friend dead, the friend also found the dead body of the victim's dog. Police believed the dog's death was the result of neglect.

*State v. Shafer*, 237 W. Va. 616, 618–19, 789 S.E.2d 153, 155–56 (2015).

In rejecting petitioner's challenge to his sentence, this Court stated as follows:

With the strongest conviction, we conclude that the facts surrounding Mr. Shafer's involvement in the victim's death warrant the sentence imposed by the

3

circuit court. Mr. Shafer's decision to target, threaten, and frighten a vulnerable, elderly woman was calculated and deliberate. His repeated ransacking of the victim's home, his neglect of the victim's dog, and his attempt to thwart police investigation all show his utter disregard for the sanctity of life and his lack of remorse for his involvement in the victim's murder. Since before his incarceration in 2010, he has made little effort to conform his behavior to law, having chosen to perpetuate his drug habit and reject opportunities to alleviate his addiction. In light of the totality of Mr. Shafer's conduct, and given that his sentence falls within the statutory limits imposed for felony murder, the sentence imposed upon him does not shock the conscience or offend fundamental notions of human dignity. His heinous actions justify his permanent removal from society.

*Id.* at 623, 789 S.E.2d at 160.

After the appointment of counsel, petitioner filed the instant petition for a writ of habeas corpus before the circuit court arguing two grounds for relief. First, petitioner asserted that trial counsel was ineffective by (1) failing to secure a forensic examination to assess petitioner's capacity, competency, or criminal responsibility in light of petitioner's drug problem, and (2) insisting that petitioner accept a "disastrous" plea agreement. Second, petitioner asserted that the State breached the plea agreement when the Office of the Attorney General argued in favor of petitioner's life-without-mercy sentence in response to petitioner's direct appeal to this Court. Following an omnibus hearing, in which the circuit court heard testimony from petitioner and his trial counsel, the circuit court denied petitioner's habeas petition by order entered on April 25, 2017. This appeal followed.

**Discussion**

This Court has set forth the following standard for review of a circuit court's denial of a petition for writ of habeas corpus:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006). With this standard in mind, we turn to petitioner's arguments on appeal.

First, petitioner argues that his trial counsel was ineffective because he (1) failed to investigate and present a diminished capacity defense, (2) failed to object to prejudicial language in petitioner's pre-sentence report, and (3) recommended that petitioner accept a "disastrous" plea agreement that resulted in petitioner serving a life sentence. We have held as follows with respect to claims of ineffective assistance of counsel:

4

5.	In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

6.	In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Syl. Pts. 5 and 6, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

Petitioner states that he informed his counsel of his long history of mental health problems, including ongoing and untreated depression and attention deficit disorder, as well as a his pervasive methamphetamine and pill addiction. Petitioner's assertion here is essentially that he lacked the competency to stand trial, but counsel failed to pursue such a defense. As the circuit court noted, the test for competency to plead guilty is the same as the test for competency to stand trial. *See State v. Cheshire,* 173 W. Va. 123, 125, 313 S.E.2d 61, 63 (1984)("The test for mental competency to stand trial and the test for mental competency to plead guilty are the same."). And, "[t]o be competent to stand trial, a defendant must exhibit a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational, as well as factual, understanding of the proceedings against him." *Id.* at syl. pt. 1 (citation omitted).

However, contrary to petitioner's assertion, there appears to have been no serious question regarding petitioner's competency, either at time of the offenses or at the time he entered his guilty plea. At the plea hearing, petitioner was able to provide a detailed factual recitation of his criminal conduct that spanned fourteen pages of the plea hearing transcript. His explanations of the events were clear and his descriptions of the crime were specific. Indeed, when questioned directly by the court as to whether he "knew what [he] was doing" when he undertook the commission of the crimes and "did what [he] intended to do," petitioner responded, "Yes, your honor." Additionally, at the omnibus hearing, trial counsel testified that he was aware of petitioner's purported mental health history and drug problem, and, as a result, consulted with forensic evaluator Dr. Timothy Saar. Based on this consultation, Dr. Saar advised trial counsel that there was no good-faith basis upon which to request a competency evaluation. Trial counsel also testified that there was nothing about petitioner's demeanor that caused him to question petitioner's sanity or competency. Therefore, we cannot conclude that trial counsel was objectively deficient by failing to pursue a competency evaluation.

Petitioner also contends that trial counsel was ineffective by failing to object to "gratuitous" and "inflammatory" comments contained in petitioner's pre-sentence investigation

5

report. Here, petitioner fails not only to identify the alleged problematic comments in his brief, but, more importantly, how they might have prejudiced him. Accordingly, we find no merit in petitioner's argument.

Petitioner's final contention that his trial counsel was ineffective is that counsel recommended that petitioner accept a "disastrous" plea agreement. Petitioner argues that he could have obtained the same result had he lost at trial. While this may be true, that in no way makes the plea agreement "disastrous" or "ineffective assistance of counsel per se," as petitioner asserts. First, as the circuit court correctly found based upon the testimony of trial counsel at the omnibus hearing, the evidence against petitioner was "overwhelming;" he gave three separate statements admitting to his participation in the crimes; and had two codefendants who could have testified against him. Proceeding to trial posed little chance for acquittal on any of the charges petitioner would have been facing. Second, the plea agreement secured by counsel included two valuable concessions in petitioner's favor: dismissal of a first-degree robbery charge and the State's recommendation that petitioner receive mercy at sentencing. We cannot find that it was objectively unreasonable for trial counsel to recommend that petitioner accept the agreement. Thus, upon our review of the record, we reject petitioner's claim in his first assignment of error that his trial counsel was ineffective.

In his second and final assignment of error, petitioner claims that the State violated the terms of the plea agreement when the Office of the Attorney General argued in support of the circuit court's sentence in its defense of petitioner's direct appeal to this Court. In relevant part, the agreement provided as follows:

> In regard to disposition, the State of West Virginia recommends commitment to the penitentiary on all counts, and further recommends Mercy pertaining to the First Degree Murder charge contained in Count Four. Also, the State of West Virginia will stand silent as to whether the sentences on the other counts should run consecutive to or concurrent therewith.

This Court has held that "[a]s a matter of criminal jurisprudence, a plea agreement is subject to principles of contract law insofar as its application insures a defendant receives that to which he is reasonably entitled." *State ex rel. Brewer v. Starcher*, 195 W. Va. 185, 192, 465 S.E.2d 185, 192 (1995) (citation omitted). In the present case, it is undisputed that the State complied with every aspect of the agreement when petitioner entered his guilty plea. At that point, the State fulfilled its end of the bargain. Petitioner can point to no language in the plea agreement that binds the State to advance or forgo any argument in the event petitioner appealed his sentence to this Court. Therefore, we reject petitioner's far-fetched claim that the State breached the agreement by arguing in support of the sentence in a subsequent appeal to this Court.

### Conclusion

For the foregoing reasons, we affirm the Circuit Court of Kanawha County's Final Order Denying Petitioner's Amended Petition for Writ of Habeas Corpus, entered on April 25, 2017.

6

Affirmed.

**ISSUED:** February 9, 2018

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

7